UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

AUGUST LARTIGUE, JR.

                                     CIVIL ACTION NO. 2:09-cv-00262

VERSUS

                                     JUDGE JAMES T. TRIMBLE

MICHAEL ASTRUE, COMMISSIONER     MAGISTRATE JUDGE JAMES D. KIRK
    OF SOCIAL SECURITY

<u>REPORT AND RECOMMENDATION</u>

     August Lartigue, Jr. ("Lartigue") filed a Title XVI application for Social Security Income ("SSI") on January 23, 2006 (R. 112-115). At the time he filed his application, he was 47 years old. His claim was initially denied on March 15, 2006 so Lartigue timely filed a request for hearing before an Administrative Law Judge ("ALJ") (R. 82-85, 89). The ALJ held a hearing on June 12, 2008 (R. 23-30) and issued an unfavorable decision on July 7, 2008 (R. 12-22). Lartigue sought review by the Appeals Council and submitted additional medical evidence. Specifically, a follow up psychological evaluation by Jerry L. Whiteman, Ph.D. (R. 268-273). Review of the matter was denied on December 12, 2008 (R. 6-9). As the decision became the final decision of the Commissioner of Social Security ("the Commissioner"), Lartigue filed the instant action seeking judicial review.

     To qualify for SSI under Title XVI of the Social Security Act,

a claimant must file an application and be an "eligible individual" as defined in the Act.   42 U.S.C. §1381(a).   Eligibility is dependent upon disability, income and other financial resources. 42 U.S.C. §1382(a).   To establish disability, a claimant must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve (12) months.   Claimant must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy.   42 U.S.C. §1382(a)(3).

<u>Summary of Pertinent Facts</u>

Lartigue, his non-attorney representative, Anthony Mitchell, and vocational expert (VE), Jeffrey J. Peterson, attended the hearing on June 12, 2008.   At the time of the hearing, Lartigue was 50 years old (R. 285).   Lartigue testified that he was not working and did not have any source of income, other than money remaining from a personal injury lawsuit settlement (R. 285-286, 293).   He testified that the last time he worked was in the 1990s as a butcher but he lost the job when the business closed (R. 289-91).   He had since sought employment but was turned down because of the injuries he sustained in various car accidents (R. 289-290, 307).

Medically, Lartigue complained of headaches, back, chest, shoulder, ankle and neck pain (R. 288, 295-296, 310).   He

2

participated in physical therapy after the car accident and received Hydrocortisone shots in his back; however, he did not undergo surgery despite the recommendation (R. 293, 294). He also complained of arthritis in his shoulder which he broke during the 1999 automobile accident (R. 295).

Other injuries he sustained outside of the car accident included an injury to his ankle in the 1990's that resulted in the placement of pins and screws(R. 295-296) and a broken jaw on three different occasions as a result of physical altercations. He testified that his ankle still bothered him and that he was unable to eat hard foods due to an improperly healed jaw.

When asked about his physical abilities, he stated he could sit 15 minutes at a time and could stand longer than he could sit (R. 301). He advised that his walking was limited because he experienced significant back pain (R. 301). He also advised that he believed he could lift 20 pounds if he had to do so (R. 301).

Regarding his mental status, Lartigue complained that over the last five years he had become a "grouch" and people did not interact with him often (R. 303). He saw a psychiatrist and believed his anger was attributed to his depression (R. 305). He further testified that though he completed the eleventh grade, he failed three years of school but was promoted due to his age (R. 286-287). He stated that he was placed in the "slow class for dummies" and was illiterate (R. 286-288).

The ALJ posed a hypothetical question to the VE as to what work the following person could perform:

> [a] younger individual, 11th grade education, exertional ability to occasionally lift 20 pounds, 10 pounds frequently with a sit/stand option; walking ability four of weight; push/pull and gross/fine is unlimited except there's no overhead lifting with the left extremity. There's no stairs, ladders, ropes, scaffolds, or running. There's an occasional bend, stoop, crouch, crawl, balance, twist, and squat. From a mental standpoint the claimant has the ability to get along with others.  He can understand simple instructions.  He can concentrate and perform on simple tasks and he can respond and adapt to workplace changes and supervision.

The VE stated that such a person could perform unskilled, light duty work such as a hand packer/packager, food preparation worker and ticket taker (R. 311-312).

In response, Lartigue's attorney added various other limitations to the ALJ's hypothetical.  When asked whether a hypothetical individual with marked limitations in the ability to make judgments on simple, work-related decisions could perform the aforementioned jobs, the VE conceded he or she could not (R. 317). The VE also conceded that simply changing the ALJ's hypothetical to consider a person with a marked limitation in the ability to respond appropriately to changes in the work place would also erode the job opportunities and if this same person experienced marked limitation in the ability to make judgments on simple work related decisions and to respond appropriately to work pressures in a usual situation, the jobs would be completely eliminated (R. 318).

Subsequent to the hearing, the ALJ issued his ruling in which

4

he found that Lartigue had not engaged in substantial gainful activity since he submitted his application on January 23, 2006. He also found that Lartigue suffered from the following severe impairments: arthritis, hypertension and a history of drug abuse; however, there was no impairment or combination of impairments which met or medically equaled one of the listed impairments (R. 16).

In assessing Lartigue's RFC, the ALJ found Lartigue could lift and carry 20 pounds occasionally, 10 pounds frequently with an option of sitting or standing. He was able to walk four hours in an eight hour day and generally had unlimited push and pull and unlimited gross and fine dexterity. However, he was unable to do any overhead lifting with his left upper extremity. He was also unable to do any running, climbing of stairs, ladders, ropes and/or scaffolds but could occasionally bend, stoop, crouch, crawl, balance, twist and squat. Mentally, he was able to get along with others, understand simple instructions, concentrate on and perform simple tasks and respond and adapt to changes in the workplace and supervision (R. 17).

Lartigue had a limited education, no recordable past relevant work and no transferable job skills (R. 21). As he was 47 at the time he filed his application, he was considered a younger individual (R. 21). In light of his age, education, work experience and RFC, claimant could perform the work of a hand

packager, food preparation clerk and ticket taker.  Accordingly, he was not disabled (R. 21-22).

## Standard of Review

In considering Social Security appeals such as the one presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether the decision comports with relevant legal standards.  McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999).  For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion.  It must be more than a scintilla but need not be a preponderance.  Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).  Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole.

A court reviewing the Commissioner's decision may not retry factual issues, re-weigh evidence, or substitute its judgment for that of the fact-finder.  Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th cir. 1983).  The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court.  Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981).  Also, Anthony v.

6

Sullivan, 954 F.2d 289, 295 (5th Cir. 1992).  The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. Dellolio, 705 F.2d at 125.  However, to make a finding that substantial evidence does not exist, a court must conclude there is a "conspicuous absence of credible choices" or "no contrary medical evidence."  Johnson v. Bowen, 864 F.2d 340, 343-344 (5th Cir. 1988); citing, Hames v. Heckler, 707 F.2d 162, 164 (5th Cir. 1983).  Also, Dellolio, 705 F.2d at 125.

Issues

Lartigue raises the following issues for review:

1.   Whether the ALJ erred in assessing his Residual Funcational Capacity (RFC); and

2.   Whether substantial evidence support the ALJ's findings at step three.

Residual Functional Capacity

Lartigue argues the ALJ erred in assessing his RFC because he did not properly consider his mental impairment.  A review of the record shows that the ALJ afforded little weight to Dr. Whiteman's diagnosis of mild mental retardation and determination that he possessed both moderate and marked limitations when it came to understanding, remembering and carrying out instructions as well as responding appropriately to supervision, co-workers and work pressures in a work setting.

In explaining his decision to afford little weight to Dr.

7

Whiteman's report, the ALJ improperly relies upon the fact Lartigue visited Dr. Whiteman only once and:

> the visit was arranged and paid for by the claimant's representative who has been regularly employing Dr. Whiteman for years to assess his client's "mental" condition.  This evaluation can hardly be considered an independent assessment of the claimant's mental condition.

(R. 20).  Dr. Whiteman's report is the only evidence in the record regarding Lartigue's mental impairments.  Dr. Whiteman is a psychologist and his findings are based, in part, upon Lartigue's performance on the Wechsler Adult Intellegence Scale III test.  If the ALJ felt the evaluation could "hardly be considered an independent assessment" he should have retained a state examiner to conduct an evaluation or called witnesses to provide additional evidence regarding Lartigue's mental status.

The ALJ further supports his decision to afford little weight to the evaluation by stating "[i]n order to make a diagnosis of mental retardation, there must be evidence of such diagnosis prior to age 22" but "[s]uch evidence is lacking in this case."  (R. 20).  Additionally, he places undue emphasis on Lartigue's performance of "extensive daily activities" concluding that his ability to perform them did not comport with a diagnosis of mild mental retardation.

With respect to the onset prior to the age of 22, a diagnosis of mental retardation is not required.  Instead, onset may be shown or supported by evidence of the impairment during the developmental

period.    In this case, the record contains evidence Lartigue attended special education classes, failed three grades, was promoted to the 11th grade because of his age and was/is illiterate. The ALJ simply glosses over this evidence.  Moreover, he fails to develop this portion of the record as he neither sought the testimony of witnesses who were aware of Lartigue's abilities during his developmental years nor sought school records.

It is worth noting that the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision (2000) ("DSM-IV-TR") supports the presumption that mental retardation is a condition that does not change throughout life.

> The essential feature of Mental Retardation is significantly subaverage general intellectual functioning (Criterion A) that is accompanied by significant limitations in adaptive functioning in at least two of the following skill areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health and safety (Criterion B).  The onset must occur before age 18 years (Criterion C).

(DSM-IV-TR, 41).[1]

Moreover,

---

[1]  The term "deficits of adaptive functioning" is not defined in the Listings but Listing 12.00 does advise that four criteria are used for determining "severity".  These four criteria are activities of daily living, social functioning, concentration, persistence and pace and episodes of decompensation and appear closely related to the aforementioned adaptive functioning behaviors.

As a group, people with this level of Mental Retardation typically develop social and communication skills during the preschool years (ages 0-5 years), have minimal impairment in sensorimotor areas, and often are not distinguishable from children without Mental Retardation until a later age. By their late teens, they can acquire academic skills up to approximately the sixth grade level. During their adult years, they usually achieve social and vocational skills adequate for minimum self support, but may need supervision, guidance, and assistance, especially when under unusual social or economic stress. With appropriate supports, individuals with Mild Mental Retardation can usually live successfully in the community, either independently or in supervised settings.

(DSM-IV-TR, 43, Section 317).

Lartigue fits the above description as he failed seventh and eighth grade and only made it to the 11th grade because he was continuously promoted. He acquired vocational skills necessary to hold down a job and support himself (as a laborer he operated a jack hammer and saw and as a butcher he operated a saw and made sausage). While he could perform tasks on his own, such as driving, he required assistance in matters such as handling money and caring for himself and his household. The record also reflects that when he went shopping, it was with someone else. If he prepared sandwiches or frozen meals, it was only because others had not prepared his meal and it was only a couple of times a week. Also telling, but disregarded by the ALJ, is the fact his personal hygiene was lacking. He bathed infrequently and generally only after being reminded to do so.

In light of the fact the ALJ failed to properly consider

Lartigue's ability to initiate and participate in activities independent of supervision or direction[2] and improperly discounted the weight that should be afforded to Dr. Whiteman's psychiatric evaluation, substantial evidence does not support the ALJ's RFC with respect to Lartigue's mental impairment(s). Therefore, the matter should be remanded for further proceedings to evaluate Lartigue's mental impairment. A determination as to whether or not he is in fact mildly mentally retarded, whether he meets Listing 12.05, whether a mental impairment affects his ability to perform substantial gainful activity and any other relevant findings should be made.

Listing 12.05(c)

As the record requires further development with respect to Lartigue's mental capacity, a determination as to whether or not he meets Listing 12.05C is not proper at this time.

Conclusion

Accordingly, IT IS RECOMMENDED that Lartigue's appeal be GRANTED and the matter REMANDED for further proceedings consistent with the views expressed herein.

Under the provision of 28 U.S.C. §636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written

---

[2]   Though the ALJ states these activities were done without assistance for years, the record reflects reliance, at least in some capacity, upon his mother or wife/ex-wife.

objections with the Clerk of Court.   No other briefs or responses (such as supplemental objections, reply briefs etc.) may be filed. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.   A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.   Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS  FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 15th day of June, 2011.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE

12